UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                    Case No. 17-cr-20740
v.                                    Hon. Gershwin A. Drain

**(D-11) CARY DAILEY,**

      Defendant.
_____/

## OPINION AND ORDER REVOKING BOND

### I. INTRODUCTION

On November 1, 2017, Defendant Cary Dailey was charged in an Indictment with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), alleging that Defendant and his co-conspirators are members in a street gang engaged in criminal activities, including narcotics trafficking, robbery and extortion. A Superseding Indictment was filed on November 15, 2017, which added an additional charge for being a felon in possession of a firearm.

On November 14, 2017, Defendant appeared for a detention hearing before the magistrate judge. Notwithstanding pretrial services recommendation to detain

Defendant pending trial, the magistrate judge concluded that conditions exist which will reasonably assure Defendant's appearance at future proceedings in this matter, as well as the safety of the community. Thus, the magistrate judge denied the Government's request to detain the Defendant pending trial. The Government has filed an appeal of the magistrate judge's bond order. A hearing on the Government's appeal occurred on November 17, 2017. For the reasons that follow, the Court will revoke Defendant's bond.

## II. FACTUAL BACKGROUND

The instant action stems from a multi-year investigation of the Smokecamp street gang, which historically has been referred to as the "Runyon Boys," "Original Paid Bosses," and "Paid Bosses, Inc." (hereinafter "Smokecamp/OPB"). Smokecamp/OPB has been operating since at least 2007 and its main source of revenue is the sale of narcotics, including cocaine, cocaine base, heroin, marijuana, ecstasy, and various prescription medications.

Smokecamp/OPB has taken control of the neighborhood near Seven Mile and Albion Roads on the east side of Detroit, which members refer to as "ABlock." Smokecamp/OPB members sell narcotics from "trap" houses, the Plaga Apartment complex and businesses such as the East Seven Mile Liquor Store, Fresh Fish Market, MetroPCS and the Sunoco gas station, which are all located in the ABlock

neighborhood. Smokecamp/OPB members have also traveled to West Virginia, Ohio and Kentucky to sell controlled substances.

Smokecamp/OPB members utilize a variety of unifying marks and identifying signs such as red clothing, tattoos of five-pointed stars and the number 724. They also regularly use social media websites such as Instagram, Twitter, Facebook and YouTube to highlight their affiliation with the gang, as well as to boast about their criminal activities.

Smokecamp/OPB members protect their ABlock "territory" by using intimidation and violence, including assaults and robberies, both with dangerous weapons, thereby perpetuating a climate of fear in the ABlock neighborhood. They are also alleged to have committed extortion, money laundering and witness intimidation in furtherance of their conspiracy.

Defendant is twenty eight years old and a lifelong resident of Detroit. He currently resides with his sister. He has two children, age seven and three. Defendant is currently unemployed. He has a sparse employment history with past work with a cell company and landscaping.

Defendant has an extensive criminal history, including the most recent conviction for narcotics trafficking, along with two of his co-conspirators named in the Superseding Indictment, in the United States District Court for the Northern District of West Virginia. Defendant was sentenced to a term of forty-one months

imprisonment and three years of supervised release. The conditions of his supervision include the prohibition of "frequent[ing] places where controlled substances are illegally sold, used, distributed or administered." *See United States v. Williams*, No. 1:14-cr-00078, Dkt. No. 209 at Pg ID 605. In addition to being precluded from possessing firearms, ammunition or other dangerous weapons, Defendant is also prohibited from "associate[ing] with any persons engaged in criminal activity and . . . any person convicted of a felony, unless granted permission to do so by his probation officer." *Id.* Defendant's supervision was recently transferred to this district.

Defendant was convicted of marijuana possession and received a three months of probation in 2009. He failed to appear several times and a warrant was issued. A year later, Defendant pled guilty to attempted carrying a concealed weapon and received two years of probation. Again, Defendant committed numerous probation violations while serving this sentence.

Defendant has been arrested thirty one times. He has repeatedly been charged with loitering, which is consistent with the allegations in the Superseding Indictment as Smokecamp/OPB members sell narcotics out of "trap" houses and businesses in the ABlock neighborhood

During the hearing on this matter, the Government introduced various photographs and statements posted by Defendant from his social media accounts.

Since his release from custody stemming from the West Virginia conviction, Defendant has made several posts suggesting his continued involvement with Smokecamp/OPB and criminal activity. In June of this year, while living at a halfway house, Defendant posted a photograph from his Instagram account depicting a gun and money. On September 16, 2017, Defendant posted a picture of himself in front of co-conspirator Richard Langston's house. The post included emoji icons of guns and drugs, as well as a statement that "I never left."

Defendant self-reported to his probation officer on September 11, 2017. However, his probation officer scheduled a meeting at his current residence and he was not there at the scheduled time. His probation officer contacted him, and Defendant claimed to be at his girlfriend's house but refused to give the probation officer her address. She made several attempts for a visit, but Defendant was never home.

On November 8, 2017, an early morning search was executed at Richard Langton's residence. Defendant was found in one of the bedrooms with a gun lying next to a pillow on the bed. Marijuana, ammunition, needle, and a digital scale were also recovered as a result of the search. Defendant was arrested and interviewed by pretrial services, which recommended that Defendant be detained pending trial.

## III. LAW & ANALYSIS

### A. The Bail Reform Act

Title 18 U.S.C. § 3145(b) allows the district judge to review an order detaining a defendant. It is a *de novo* hearing. *U.S. v. Jones*, 804 F.Supp. 1081 (S.D. Ind. 1992); *U.S. v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). "The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Generally, in order for a defendant to be detained, the government must establish the (1) "risk of flight by a preponderance of the evidence" or (2) "dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). Pre-trial detention shall be ordered only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

In determining whether there are conditions which will reasonably assure the appearance of the person and the safety of the community, the district court must make findings based on the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g).

### B. Nature and Characteristics of the Charged Offense

Defendant is named in a sixteen count Superseding Indictment charging an extensive racketeering conspiracy. This conspiracy is alleged to have committed overt acts of assault, narcotics trafficking, extortion, money laundering and armed robbery. In essence, the Superseding Indictment describes a sophisticated organization that has terrorized the Seven Mile and Albion Roads neighborhood on the east side of the city for roughly a decade. The full extent of the alleged conspiracy is unquestionably serious.

The offense for which Defendant is charged exposes him to a sentence of up to twenty years in prison. Additionally, if convicted of the firearm offense, Defendant faces a mandatory minimum sentence of ten years. This factor weighs in favor of detention.

### C. The Weight of the Evidence

The second factor the Court must consider is the weight of the evidence against Defendant. 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948.

Here, the weight of the evidence of Defendant's dangerousness is strong. Defendant has a felony conviction for narcotics trafficking, yet he continues to possess firearms, even while under supervision. His social media postings since

his release from prison for narcotics trafficking demonstrate that Defendant is engaging in the same type of conduct for which he was previously convicted, notwithstanding the fact that he is currently serving a term of supervised release.

Moreover, Defendant does not appear to have given his probation officer accurate information concerning his residence, as there is evidence that he may be living with another Smokecamp/OPB member since he was present at the home during an early morning search of Richard Langston's residence, wherein marijuana, firearms, ammunition and a digital scale were recovered. Defendant has not stayed clear of his former activities. This factor weighs in favor of detention.

### D. History and Characteristics of the Defendant

The third factor requires that the Court review the history and characteristics of the Defendant, which are statutorily separated into two categories. The first category examines the Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The second category asks "whether, at the time of the current offense or arrest, [Defendant] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

Defendant has lived in Detroit his entire life. He has two minor children. Verifiable employment is noticeably absent except for work at a cell company and landscaping. However, Defendant's criminal history reveals an individual who is unwilling to follow the conditions of his probation and refrain from engaging in further criminal conduct. Defendant is a member of a street gang and he proudly boasts such membership by posting photographs showing him in the possession of drugs and large amounts of money. Defendant posted a photograph from his Instagram account depicting a gun and money in June of this year even though he was living at a halfway house at the time. On September 16, 2017, Defendant posted a picture of himself in front of co-conspirator Richard Langston's house. The post included emoji icons of guns and drugs, as well as a statement that "I never left."

Lastly, Defendant was found in possession of a firearm in November of this year. Defendant has only recently begun serving his supervised release, yet he has already demonstrated an utter disregard for the conditions of his supervision.

Based on the totality of the record before this Court, Defendant's history and characteristics suggest that he is a dangerous person who should not be released pending trial.

### E. The Nature and Seriousness of the Danger Posed by Defendant's Release

The fourth and final factor demands that the Court consider "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). For all of the reasons explained above, this factor weighs heavily in favor of a finding that Defendant poses a danger and should be detained.

The Court finds, by clear and convincing evidence, that there is no condition or set of conditions of release that can adequately protect the community from the danger posed by Defendant. The Court concludes that all of the factors set forth in § 3142(g) weigh heavily in favor of detention.

## IV. CONCLUSION

For the reasons articulated above, as well as the reasons given during the November 15, 2017 hearing, Defendant's bond is HEREBY REVOKED and he shall be detained pending trial.

SO ORDERED.

Dated: November 27, 2017        /s/Gershwin A. Drain
                                GERSHWIN A. DRAIN
                                United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 27, 2017, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk